Date signed October 15, 2015



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| QUIANA BAXTER, | * | Case No. 13-27709-DER |
| Debtor. | * | (Chapter 7) |
| * * * * * * * | * * * * * * * | |
| QUIANA BAXTER, | * | |
| Plaintiff, | * | |
| vs. | * | Adversary Pro. No. 14-00386-DER |
| SUMMERFIELD INVESTMENT GROUP, LLC, | * | |
| Defendant. | * | |
| * * * * * * * | * * * * * * * | |

### MEMORANDUM OPINION

The debtor, Quiana Baxter ("Baxter"), commenced this adversary proceeding by filing a complaint against her former landlord, Summerfield Investment Group, LLC ("Summerfield"), that seeks a finding of contempt and other relief against Summerfield for alleged violation of both the automatic stay under 11 U.S.C. § 362(a) (Count One) and the discharge injunction under 11 U.S.C. § 524(a) (Count Two).

A trial on the merits of the complaint was held on April 9, and May 5, 2015. At trial, the parties called several witnesses to testify and introduced various documents into evidence. At the conclusion of trial, the court requested post-trial memoranda and set closing argument for June 17, 2015. After closing argument, the court held this matter under advisement and permitted the parties to file supplemental memoranda. Summerfield filed a supplemental memorandum on June 25, 2015. Baxter had the option to file a supplemental memorandum by July 1, 2015, but chose not to do so. For the reasons that follow, the relief sought by Baxter will be granted in part and denied in part.

## JURISDICTION

This court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Rule 402 of the Local Rules of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b). This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).

## FINDINGS OF FACT

Baxter entered into a Three-Year Residential Dwelling Lease with Summerfield (the "Lease") on March 30, 2010 for a house located at 12 North Potomac Street, Baltimore, Maryland 21224 (the "Property") [Plaintiff's Exhibit 2]. The Lease states that the date of "lease offer" was April 1, 2010, and that the move in date was May 1, 2010. Baxter moved into the Property in May of 2010 and continued to reside there with her children until January 4, 2014. The initial term of the Lease expired on April 30, 2013. Under the Lease, however, the lease term was renewed automatically from year to year after expiration unless one of the parties

elected to terminate it. No such election was made and thus the Lease term was extended to April 30, 2014. In the event of litigation concerning enforcement of the Lease, the Lease provides for the prevailing party to be awarded reasonable attorney's fees.[1]

The Housing Authority of Baltimore City ("HABC") provided housing assistance payments to Summerfield on behalf of Baxter for the Property under the Housing Choice Voucher (Section 8) Program (the "Section 8 Program"). At the times relevant here, the monthly rent under the Lease was $1,420.00, of which $584.00 was paid by Baxter and $836.00 was paid by HABC under the Section 8 Program. Rent was due under the Lease on the first day of each month, and was subject to a late charge of five percent (5%) if it was paid more than 15 days after the due date.

### *The District Court Judgments*

Baxter did not pay her portion of the rent due under the Lease on August 1, 2013. As a result, Summerfield filed a complaint against Baxter on August 27, 2013 in the District Court of Maryland for Baltimore City (the "District Court") docketed as *Summerfield Investment Group, LLC v. Quiana Baxter*, Case No. 2013107409, in which Summerfield sought a judgment for $1,454.25 and for possession of the Property [Plaintiff's Exhibit 11].[2] Trial on the complaint was set for September 6, 2013. Baxter did not appear at the trial and as a result, on September 6, 2013 the District Court entered a judgment by default in favor of Summerfield and against Baxter for $1,454.25 and for possession of the Property (the "First District Court Judgment").

---

[1] Paragraph 23 of the Lease (which is titled "Attorney's Fees and Court Costs") provides as follows: "Should any action be brought by either party hereto to enforce any provision of this Lease, the prevailing party in such action shall reimburse by the other party for all reasonable attorney's fees, necessary expenses, and court costs incurred by the prevailing party in the action."

[2] The complaint was filed on behalf of Summerfield by its agent Bristol Credit, Inc. ("Bristol Credit") and was signed by Sal Catalfano, a representative of Bristol Credit. The complaint was filed on the standard one-page District Court form titled "Failure to Pay Rent – Landlord's Complaint for Repossession of Rented Property" designed for actions under § 8-401 of the Real Property Article of the Maryland Annotated Code.

Baxter did not pay the amount due and did not appeal the First District Court Judgment within the four-day time period provided under Maryland law.

Baxter also did not pay her portion of the rent due under the Lease on September 1, 2013. As a result, Summerfield filed a second complaint against Baxter on October 2, 2013 in the District Court docketed as *Summerfield Investment Group, LLC v. Quiana Baxter*, Case No. 2013376553, in which Summerfield sought a judgment for $613.20 and for possession of the Property.[3]  Trial on the second complaint was set for October 11, 2013. Baxter did not appear at the second trial and as a result, on October 11, 2013 the District Court entered a judgment by default in favor of Summerfield and against Baxter for $613.20 and for possession of the Property [Plaintiff's Exhibit 12] (the "Second District Court Judgment").  The last day on which Baxter could pay or appeal the Second District Court Judgment within the four-day time period provided by Maryland law was October 18, 2013.[4]

### *The Bankruptcy Filing*

Baxter (who then represented herself) filed a voluntary Chapter 7 petition in this court on October 18, 2013.  On page two of her petition under the "Certification by a Debtor Who Resides as a Tenant of Residential Property," Baxter identified Summerfield as a landlord holding a judgment for possession of her residence.  She did not check the remaining boxes on the form to (i) assert a right to cure the monetary judgment, (ii) confirm that she had tendered the required deposit with her petition, or (iii) certify that she had served a copy of the certification on Summerfield as required under 11 U.S.C. § 362(*l*) to defer application of the otherwise immediately effective exception to the automatic stay set forth in 11 U.S.C. § 362(b)(22).  The

---

[3] Like the earlier complaint, this complaint was filed on behalf of Summerfield by its agent Bristol Credit and was signed by Sal Catalfano.  This complaint was also filed on the same standard one-page District Court form.
[4] The Second District Court Judgment was entered on Friday, October 11, 2013.  The following Monday, October 14, 2013, was the Columbus Day holiday.  Thus, the last day of applicable four-day period was the following Friday, October 18, 2013.

Baxter did not pay the amount due and did not appeal the First District Court Judgment within the four-day time period provided under Maryland law.

Baxter also did not pay her portion of the rent due under the Lease on September 1, 2013. As a result, Summerfield filed a second complaint against Baxter on October 2, 2013 in the District Court docketed as *Summerfield Investment Group, LLC v. Quiana Baxter*, Case No. 2013376553, in which Summerfield sought a judgment for $613.20 and for possession of the Property.[3]  Trial on the second complaint was set for October 11, 2013. Baxter did not appear at the second trial and as a result, on October 11, 2013 the District Court entered a judgment by default in favor of Summerfield and against Baxter for $613.20 and for possession of the Property [Plaintiff's Exhibit 12] (the "Second District Court Judgment").  The last day on which Baxter could pay or appeal the Second District Court Judgment within the four-day time period provided by Maryland law was October 18, 2013.[4]

### *The Bankruptcy Filing*

Baxter (who then represented herself) filed a voluntary Chapter 7 petition in this court on October 18, 2013.  On page two of her petition under the "Certification by a Debtor Who Resides as a Tenant of Residential Property," Baxter identified Summerfield as a landlord holding a judgment for possession of her residence.  She did not check the remaining boxes on the form to (i) assert a right to cure the monetary judgment, (ii) confirm that she had tendered the required deposit with her petition, or (iii) certify that she had served a copy of the certification on Summerfield as required under 11 U.S.C. § 362(*l*) to defer application of the otherwise immediately effective exception to the automatic stay set forth in 11 U.S.C. § 362(b)(22).  The

---

[3] Like the earlier complaint, this complaint was filed on behalf of Summerfield by its agent Bristol Credit and was signed by Sal Catalfano.  This complaint was also filed on the same standard one-page District Court form.

[4] The Second District Court Judgment was entered on Friday, October 11, 2013.  The following Monday, October 14, 2013, was the Columbus Day holiday.  Thus, the last day of applicable four-day period was the following Friday, October 18, 2013.

exception under § 362(*l*) grants a limited automatic stay of the continuation of an eviction action by a landlord holding a prepetition judgment for possession of a debtor's residence.

While the eviction proceedings discussed below were pending in the District Court, the Chapter 7 trustee conducted the meeting of creditors in Baxter's Chapter 7 case and issued a Report of No Distribution on November 26, 2013 [Main Case Docket No. 31]. The Chapter 7 trustee did not assume the Lease, and thus the Lease was deemed rejected on December 17, 2013 pursuant to 11 U.S.C. § 365(d)(1). No creditor objected to Baxter's discharge and as a result this court entered an Order Granting Discharge of Debtor on January 27, 2014. Notice of entry of Baxter's discharge was sent to Summerfield by the Bankruptcy Noticing Center (the "BNC") on January 29, 2014 [Main Case Docket No. 46]. Baxter's Chapter 7 case was closed by entry of a Final Decree on February 18, 2014.

### *The Eviction Proceedings*

On October 21, 2013, Summerfield filed petitions for warrants of restitution of possession of the Property because Baxter had not complied with the First District Court Judgment and the Second District Court Judgment. Summerfield was not aware of the filing of Baxter's bankruptcy petition at that time, and did not learn of it until later when the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Notice of Meeting of Creditors") was received by its resident agent, sole owner, and managing member, Thomas F. Karle, Jr. ("Karle"). The Notice of Meeting of Creditors was issued by the Clerk of the Bankruptcy Court on October 21, 2013, and was mailed to Summerfield and other creditors by the BNC on October 23, 2013 [Main Case Docket No. 8]. The District Court then entered Orders on October 29, 2013 that directed the Sheriff of Baltimore City to evict Baxter from the

Property. When the Sheriff learned of Baxter's bankruptcy he declined to execute on the eviction orders without entry of an order by this court.

As a result, Summerfield filed a Motion for Relief from Stay to Permit Execution of Possession Order of Rental Premises at 12 N. Potomac Street, Baltimore, MD 21224 in this court on November 7, 2013 [Main Case Docket No. 23] (the "Motion for Relief from Stay"). The Motion for Relief from Stay was duly served on Baxter but she did not file an opposition so the court entered an order granting the requested relief on December 16, 2013 [Main Case Docket No. 40] (the "Order Granting Relief from Stay"). The Order Granting Relief from Stay provided, among other things, that "the Automatic Stay imposed by 11 U.S.C. § 362(a) is hereby LIFTED to allow the commencement or continuation of enforcement or execution of the judgment of possession/warrant of restitution entered by the Baltimore City District Court for the property known as 12 N. Potomac Street, Baltimore, MD  21224." The Sheriff then scheduled an eviction for January 9, 2014 [Plaintiff's Exhibit No. 17].

Baxter was notified shortly before Christmas Eve that an eviction had been scheduled and moved out of the Property prior to completion of the eviction by the Sheriff. She rented a house at 3023 McElderry Street, Baltimore, Maryland 21205 (the "McElderry Property") and moved there with her children on January 4, 2014. Baxter returned on January 5, 2014 to clean up the Property in anticipation of the eviction, but had to leave unexpectedly to deal with water service issues at the McElderry Property. When she returned to the Property on January 7, 2014 to complete her cleaning, Baxter was alarmed to find the lights and heat on, and drawers removed from the refrigerator. Uncertain as to who might be inside and fearful for her safety, Baxter left and never returned to the Property.

### *Section 8 Program Termination*

Simultaneously, another series of events resulted in the termination by HABC of Baxter's participation in the Section 8 Program. Baxter's financial difficulties stemmed from a wage garnishment that left her unable to pay her rent. At the time, Baxter wanted to continue to reside at the Property so she called Karle to discuss possible payment arrangements for her rent. Baxter expected to receive income tax refunds in 2014 that would be more than sufficient to cure her rent arrearages. Once Baxter filed her bankruptcy case, Karle refused to have further discussions on the subject, and informed Baxter that by reason of her bankruptcy petition (i) he could no longer accept payment from her, and (ii) the Lease was terminated and rendered void.

Karle is a sophisticated landlord. Through Summerfield and other companies under his control, he currently leases approximately 200 properties to tenants in Baltimore City. He has dealt with HABC for approximately 13 years concerning Section 8 Program tenants. According to Karle's testimony, he had never before encountered a tenant who was subject to a wage garnishment. When Baxter contacted him, Karle suggested that Baxter contact HABC to see if HABC would take the garnishment into account for purposes of determining her level of income and possibly increasing the amount of her rent assistance.

The result of Baxter's interaction with HABC was not what she or Karle had hoped. Baxter apparently informed HABC not only of the garnishment, but also of the entry of the First District Court Judgment. As a result, HABC sent Baxter a letter dated December 4, 2013 that notified Baxter that her participation in the Section 8 Program would be terminated on January 7, 2014 [Plaintiff's Exhibit No. 16]. Baxter appealed, and HABC conducted an informal hearing on December 26, 2013. Karle learned of the hearing shortly before it was held, and sent a representative of Summerfield to observe. Summerfield did not communicate with HABC at or

before the informal hearing in an effort to terminate Baxter's participation in the Section 8 Program. Nothing in the evidence presented in this court supports Baxter's assertion that Karle acted deliberately and with an intention to terminate her participation in the Section 8 Program. The HABC hearing officer ultimately determined that Baxter's participation in the Section 8 Program should be terminated because the First District Court Judgment was evidence of material lease violations and upheld the prior initial determination to terminate as of January 7, 2014.

### *Post-Discharge Lawsuit*

After Baxter was granted a discharge in this court, Summerfield filed a complaint against Baxter in the District Court on February 7, 2014 for breach of lease docketed as *Summerfield Investment Group, LLC v. Quiana Baxter*, Case No. 01-01-0003047-2014 (the "Post-Discharge Lawsuit"). Unlike both the First and Second District Court Judgment complaints, the Post-Discharge Lawsuit was filed on a one-page District Court form designed for, among other things, contract actions. Summerfield was not represented by an attorney at the time but unlike the two prior lawsuits, the complaint was signed by Karle on behalf of Summerfield as opposed to by Bristol Credit as an agent for Summerfield. The one-page form complaint was accompanied by, (i) a separate Civil Complaint signed by Karle as "President" of Summerfield (the "Civil Complaint"), (ii) a notarized Affidavit signed by Karle (the "Karle Affidavit"), (iii) the Lease, and (iv) a Statement of Account that itemized the $6,760.40 in damages sought by Summerfield.[5]

---

[5] The $6,760.00 in damages alleged by Summerfield were composed of (i) $584.00 in post-petition rent for the month of November of 2013, (ii) $584.00 in post-petition rent for the month of December of 2013, (iii) $1,420.00 in post-petition rent for the month of January of 2014, (iv) $1,420.00 in post-petition rent for the month of February of 2014, (v) $1,680.00 for electrical and other repairs to the Property made by Summerfield after the eviction, (vi) $510.00 for cleaning costs and trash removal at the Property incurred by Summerfield after the eviction, (vii) $209.70 in late charges on the various post-petition rent amounts, and (viii) $362.00 in attorney's fees incurred by Summerfield in connection with the filing in this court of its Motion for Relief from Stay. At trial in this court, Summerfield conceded that it was improper and a violation of the discharge injunction to assert the claims for the

In the Civil Complaint, Summerfield sought a judgment against Baxter for $6,760.40, "plus interest, plus reasonable attorney's fees, and the reasonable costs of [the] proceeding." The Civil Complaint and the Karle Affidavit make clear that the Post-Discharge Lawsuit was filed by Summerfield against Baxter based upon supposed contract claims for breach of the terms of the Lease.

The summons, complaint, and all supporting papers in the Post-Discharge Lawsuit were served on Baxter on February 12, 2014. Baxter was upset emotionally and experienced stress and anxiety when she learned that Summerfield had filed the Post-Discharge Lawsuit. Baxter believed she would end up with a wage garnishment like the one that precipitated her pre-bankruptcy financial difficulties and she thought that she would lose custody of her children. Fearful of these adverse consequences, Baxter sought and obtained representation by the Legal Aid Bureau, Inc. ("Maryland Legal Aid"), a nonprofit law firm that provides free legal services to low income individuals.

In response to the Post-Discharge Lawsuit, Baxter filed a Notice of Intention to Defend in the District Court on April 2, 2014. In her Notice of Intention to Defend, Baxter stated as an explanation for her defense: "I do not owe this debt. This debt has been discharged in bankruptcy." Trial in the Post-Discharge Lawsuit was initially set for April 11, 2014, but was eventually postponed to June 27, 2014.

On June 19, 2014, Baxter's attorneys at Maryland Legal Aid notified Summerfield that Baxter would move to reopen her bankruptcy case and seek relief from this court if the Post-Discharge Lawsuit was not dismissed by June 25, 2014. Baxter filed a motion in the District Court on June 23, 2014 that requested that court to stay the Post-Discharge Lawsuit pending

---

$209.70 in late charges and the $362.00 in attorney's fees. As will be explained below, these were not the only items that were improperly included in the Post-Discharge Lawsuit.

resolution by this court of her intended complaint to enforce the discharge injunction under 11 U.S.C. § 524(a).  Summerfield did not dismiss the Post-Discharge Lawsuit, and thus Baxter filed a motion to reopen her bankruptcy case on June 25, 2015 [Main Case Docket No. 48].  This court entered an order on June 26, 2015 that reopened this case to permit Baxter to commence this litigation [Main Case Docket No. 54].

## CONCLUSIONS OF LAW

For the reasons explained below, I conclude that (i) Summerfield did not violate the automatic stay, and (ii) Summerfield violated the discharge injunction and is liable to Baxter for damages, punitive damages, and attorney's fees.

### *Violation of the Automatic Stay*

The filing of a Chapter 7 petition automatically imposes the stay under § 362 of the Bankruptcy Code, which shields the debtor from most judicial actions by creditors to collect a claim for prepetition debts.  The automatic stay is "one of the fundamental protections provided by the bankruptcy laws."  *Midlantic Nat'l Bank v. N.J. Dep't Envtl. Prot.*, 474 U.S. 494, 503 (1986).  As the Fourth Circuit has said,

> It gives the debtor a breathing spell from [her] creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization, or simply to be relieved of the financial pressures that drove [her] into bankruptcy.

*Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988) (quoting H. Rep. No. 95-595, at 340-1 (1977) and S. Rep. No. 95-989, at 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 at 5840 and 6296-7).  The Bankruptcy Code defends this fundamental protection by providing that, "an individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages." 11 U.S.C. § 362(k). In order to prevail on an action under § 362(k), the plaintiff must show (1) that the automatic stay was violated, (2) that the violation was willful, and (3) that the plaintiff was injured by the violation. *Houck v. Substitute Trustee Servs.*, 791 F.3d 473, 484 (4th Cir. 2015) (citing *Garden v. Cent. Neb. Hous. Corp.*, 719 F.3d 899, 906 (8th Cir. 2013)). Baxter's claims of a stay violation fail to satisfy this test.

Baxter asserts that Summerfield's postpetition actions to enforce its judgment for possession were a willful violation of the automatic stay. It is true that Summerfield filed its petitions for warrants of restitution of possession of the Property after Baxter filed her petition in this court. Summerfield did so, however, without knowledge of the commencement of Baxter's case. The District Court issued warrants of restitution in due course and without any further prompting by Summerfield. Thus, assuming for the sake of argument that the stay was then in effect, none of those actions were a willful violation of the automatic stay by Summerfield.

More importantly, § 362(b)(22) creates an exception from the broad protections of the automatic stay for continuation of an eviction proceeding when a landlord has obtained a judgment for possession of residential real property prior to the filing of a debtor's bankruptcy petition, unless the debtor complies with the provisions of § 362(*l*) of the Bankruptcy Code. As explained above, Baxter did not comply with § 362(*l*) of the Bankruptcy Code. In any event, this court entered the Order Granting Relief from Stay that expressly authorized Summerfield to continue the eviction proceedings in the District Court. Thus, Summerfield's actions after the filing of the bankruptcy case to continue with the eviction on the basis of prepetition claims were simply not a violation of the automatic stay because no stay was in effect.

I recognize that the term "judgment for possession" is not defined in the Bankruptcy Code. It may well be that, as at least one court has suggested, an order such as the ones entered

here by the District Court is not a judgment for possession within the meaning of § 362(b)(22) unless the four-day period within which a tenant may cure or appeal has expired. See *In re Williams*, 371 B.R. 102 (Bankr. E.D. Pa. 2007). This court need not consider that question in this case, however, because the First District Court Judgment (pursuant to which Summerfield obtained its eviction) was final and non-appealable at least a month prior to the filing of Baxter's bankruptcy petition.

### *Violation of the Discharge Injunction*

A discharge granted under § 727 of the Bankruptcy Code imposes a statutory injunction that prohibits "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). As this court has observed, "[i]t is settled law that a Bankruptcy Court is authorized to invoke § 105 of the Bankruptcy Code to enforce the discharge injunction imposed by § 524 and order damages, including actual damages, attorney's fees and punitive damages, if warranted." *Sharpe v. Hertz Corp. (In re Sharpe)*, 2007 WL 1171083, at *1 (Bankr. D. Md. Apr. 17, 2007) (citing *United States v. Torres (In re Torres)*, 432 F.3d 20, 27 (1st Cir. 2005), and *Hardy v. IRS (In re Hardy)*, 97 F.3d 1384, 1389-90 (11th Cir. 1996)). The discharge injunction is as fundamentally important as the automatic stay in bankruptcy because its purpose is "to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection effort, and to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 182 (Bankr. E.D. Va. 2000) (citations omitted).

Although it has not spoken on the subject in a reported opinion, the Fourth Circuit appears to share this view. As the Fourth Circuit recently stated,

> Section 524(a)(2) of the Bankruptcy Code provides that a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor …." 11 U.S.C. § 524(a)(2). Section 105 authorizes a bankruptcy court to hold a party in civil contempt for violating an order of the court, including a discharge order. See *In re Barbour*, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987). Most courts to have considered the issue of contempt sanctions in this context have settled on a two-part test, which we adopt: (1) whether the creditor violated the injunction, and (2) whether he or she did so willfully. See, e.g., *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002); *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996); *In re Cherry*, 247 B.R. 176, 187-88 (Bankr. E.D. Va. 2000).

*Bradley v. Fina (In re Fina)*, 550 Fed. Appx. 150, 154 (4th Cir. 2014) (unpublished opinion). Other circuits have reached the same conclusion. See supra *In re Bennett* (9th Cir.), *In re Hardy* (11th Cir.), and *In re Torres* (1st Cir.). See also *Paul v. Inglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008); *Bessette v. Avco Financial Servs.*, 230 F.3d 439, 444-45 (1st Cir. 2000).

The Post-Discharge Lawsuit sought a judgment against Baxter for supposed contract claims for breach of the terms of the Lease. As discussed above, the trustee did not assume the lease under § 365(d)(1) and it was deemed rejected on December 17, 2013. Section 365(g)(1) states that the rejection of an unexpired lease constitutes a breach of the lease immediately before the date of the filing of the petition – meaning it is a prepetition breach. See *Thompson-Mendez v. St. Charles at Olde Court P'ship, LLC (In re Thompson-Mendez)*, 321 B.R. 814, 818 (Bankr. D. Md. 2005).

Commencement of the Post-Discharge Lawsuit clearly violated the discharge injunction entered in Baxter's case because it sought to collect on prepetition contractual claims under the rejected Lease. In order to award sanctions, this court must find that Summerfield violated the discharge injunction willfully. While the Fourth Circuit has not yet addressed what constitutes a

"willful" violation of the discharge injunction in a reported opinion, courts in the Fourth Circuit have held that the standard to be used is the same as the standard for determining whether a violation of the automatic stay was willful.  See *In re Cherry*, 247 B.R. at 187 (citing *In re Hardy*, 97 F.3d at 1390); *In re Fina*, 550 Fed. Appx. at 154.  Under § 362 the Fourth Circuit has held that the test for willfulness is not simply whether the creditor intended to violate the automatic stay by their actions but rather, "to constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16, (1995).  Good faith is not a valid defense in this context.  See *In re Fina*, 550 Fed. Appx. at 154 ("a good faith mistake is generally not a valid defense."); *In re Cherry*, 247 B.R. at 187 ("good faith, or the absence of an intent to violate the order, is no defense.").

Summerfield was clearly aware of the bankruptcy proceeding because it sought relief from this court when it filed the Motion for Relief from Stay.  In addition, Summerfield was sent notice of the entry of Baxter's discharge on January 29, 2014 [Main Case Docket No. 46], more than a week prior to the commencement of the Post-Discharge Lawsuit.  At trial, Summerfield even conceded that the claims asserted in the Post-Discharge Lawsuit for late charges and attorney's fees were an improper violation of the discharge injunction and relied on Summerfield's lack of counsel in the District Court as a reason why the actions were not 'willful' violations.  The Post-Discharge Lawsuit asserted contractual claims pursuant to the terms of the Lease that were discharged.  As explained above, it is the intent to take the actions, not the intent to violate the discharge injunction, that is the test and lack of counsel is not a valid defense. Thus, Summerfield's violation of the discharge injunction was willful and it is subject to sanctions for contempt.

Sanctions for a willful violation of the discharge injunction "may include actual damages, attorney's fees and, when appropriate, punitive damages." *In re Cherry*, 247 B.R. at 187 (citing *Mickens v. Waynesboro Dupont Employees Credit Union, Inc. (In re Mickens)*, 229 B.R. 114, 118 (Bankr. W.D. Va. 1999); *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 228-29 (Bankr. N.D. Ill. 1998); *Matter of Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997); and *Walker v. M&M Dodge (In re Walker)*, 180 B.R. 834, 847-49 (Bankr. W.D. La. 1995)). While generally the "American Rule" requires that each party should bear its own costs in litigation, the exceptions to this rule that apply in the case of a willful violation of the discharge injunction allow a court to enforce its orders by awarding attorney's fees for willful violations of orders as well as where a party has acted in bad faith. *In re Cherry*, 247 B.R. at 186 (citations omitted). Almost every case this court has reviewed that found a willful violation of the discharge injunction has awarded attorney's fees. Such an award is particularly appropriate in this instance because Summerfield asserted claims in the Post-Discharge Lawsuit based upon the Lease, the express terms of which provide for recovery of attorney's fees, expenses, and court costs by the prevailing party.

Baxter is entitled to an award of compensatory damages and attorney's fees for defense of the Post-Discharge Lawsuit as well as prosecuting the instant action for Summerfield's willful violation of the discharge injunction. Although Baxter was represented by Maryland Legal Aid and is represented in this matter on a *pro bono* basis, "it is in the interest of the public that such [non-profit public interest] law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when it's counsel perform legal services otherwise entitling them to the award of attorneys' fees." *Blum v. Stenson*, 465 U.S. 886, 896 (1984) (citations omitted).

In addition to attorney's fees, Baxter is entitled to actual damages incurred. During the course of this litigation, Baxter was required to devote her own time to consulting with her counsel and appearing in this court for trial. Presumably she had to take off from work and lost wages in addition to the costs of travel to court for the trial.[6] There is no doubt that this litigation required a material amount of time, effort and out of pocket expenses by Baxter. Because the court does not have evidence of the exact amount of lost wages to Baxter or the amount paid for travel to the courthouse, I find that the appropriate award of actual damages in these circumstances is $1,000.00.

Baxter experienced severe emotional trauma as a result of Summerfield's actions in violation of the discharge injunction. She had already endured a trying eviction that occurred during the holidays followed by her moving herself and her children to an area of Baltimore that she felt was far less safe for her children. In addition to this she had lost her Section 8 Program benefits and was paying substantially more for her monthly rent. Summerfield's Post-Discharge Lawsuit then put Baxter in fear that her bankruptcy was for naught and that she had endured the prior hardships of the eviction only to face the same debts she thought had been discharged. On the stand at trial she tearfully explained how she was scared the Post-Discharge Lawsuit would be the thing that would finally cripple her financially and lead to her losing her children. While in other circumstances the court might find it appropriate to award Baxter damages for the emotional trauma she endured as a result of Summerfield's actions, the Fourth Circuit has made clear that damages for emotional distress due to civil contempt are not permitted. *In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989) ("no authority is offered to support the proposition that

---

[6] Baxter's Schedule I ("Current Income of Individual Debtor") filed on December 9, 2013 at Docket No. 38 in her main case indicate that she is a full time HFS Specialist with Harbor Hospital and makes gross monthly income of $2,325.

emotional distress is an appropriate item of damages for civil contempt, and we know of none"); *In re Cherry*, 247 B.R. at 189, n.21.

As to punitive damages, such damages are generally awarded where the defendant showed some malevolent intent. *Brantley v. Weeks (In re Brantley)*, 116 B.R. 443, 449 (Bankr. D. Md. 1990). That malevolent intent is evident from the circumstances of this case. Summerfield continues to have pending litigation against Baxter in ongoing violation of the discharge injunction. Baxter, originally an unrepresented party in both this bankruptcy case and the Post-Discharge Lawsuit, had to retain legal counsel to deal with Summerfield's violations of the discharge injunction. On April 2, 2014, Summerfield was notified of Baxter's intent to defend the Post-Discharge Lawsuit on the grounds that the debt had been discharged in bankruptcy and yet did nothing to dismiss the lawsuit or take remedial actions to cure its violation. When Baxter's counsel contacted Summerfield over a month later demanding that it dismiss the Post-Discharge Lawsuit because of the discharge injunction, Summerfield refused. Baxter was then forced to reopen her bankruptcy case in order to stop Summerfield's continuing violation of the discharge injunction. Summerfield's actions in filing the Post-Discharge Lawsuit after it received notice of Baxter's discharge in addition to its willful failure to immediately rectify the violation after the filing of the Notice of Intention to Defend, which informed Summerfield that it was violating the discharge injunction, show malevolent intent sufficient to justify an award of punitive damages.

When deciding how much to award in punitive damages, "relevant factors to be considered for violations of the discharge injunction are the nature of the creditor's conduct, the creditor's ability to pay damages, the motive of the creditor and any provocation by the debtor." *In re Cherry*, 247 B.R. at 190, n.23 (citing *In re Vazquez*, 221 B.R. at 230). No evidence of

Summerfield's ability to pay damages was submitted at trial, however, as discussed herein, Summerfield is a for profit corporation that leases to numerous residents in the City of Baltimore. The Court, having considered all the factors, finds an appropriate sanction of punitive damages against Summerfield to be $5,000.00.

## CONCLUSION

For the above reasons, the court will enter (i) an order dismissing Count One of the complaint, (ii) an order setting deadlines for Baxter's counsel to file a memorandum addressing the amount of time expended and the attorney's fees and expense reimbursement it seeks (including any additional fees and expenses incurred if Summerfield does not promptly, and at its sole cost and expense, seek and obtain dismissal of the Post-Discharge Lawsuit), and for a response thereto by Summerfield, and (iii) judgment in favor of Baxter against Summerfield under Count Two of the complaint for $1,000.00 in damages, for $5,000.00 in punitive damages, and for attorney's fees and expenses in an amount to be determined by the court based upon the post-opinion memoranda to be filed by the parties.

cc:   Louise M. Carwell, Esq.
      Kay N. Harding, Esq.
      Legal Aid Bureau, Inc.
      500 E. Lexington Street
      Baltimore, Maryland 21202

      *Attorneys for Plaintiff, Quianna Baxter*

      Marc A. Ominsky, Esq.
      Century Plaza Building, Suite 249
      10632 Little River Parkway
      Columbia, Maryland 21044

      *Attorney for Defendant, Summerfield Investment Group, LLC*

-- End of Memorandum Opinion --